In re David R. LAWRENCE, Debtor.

**NORTHERN TRUST BANK OF FLORIDA, N.A., Plaintiff,**

v.

**David R. LAWRENCE, Defendant.**

**Bankruptcy No. 87–02444–BKC–TCB.**

**Adv. No. 88–0369–BKC–TCB–A.**

United States Bankruptcy Court, S.D. Florida.

Sept. 9, 1988.

---

G. Bart Billbrough, Miami, Fla., for plaintiff.

Scott Orth, Hall & O'Brien, Jerry M. Markowitz, Trustee, Miami, Fla., for defendant.

## MEMORANDUM DECISION

THOMAS C. BRITTON, Chief Judge.

The plaintiff bank seeks exception from discharge under 11 U.S.C. § 523(a)(2)(B) for

its claim in the amount of $85,000. The debtor has answered and the matter was tried on August 25.

A promissory note dated January 6, 1986 in the amount of $60,000 and a second note dated January 17, 1986 in the amount of $25,000 were executed by the debtor for the extension of credit from the plaintiff bank. Prior to the loan approval, plaintiff required and received the debtor's financial statement as of December 20, 1985. The additional documentation given to the bank by the debtor was his 1983 tax return and a memorandum prepared by him stating that his [last yearly] allocation as a partner in an accounting firm was $245,000 and that his 1985 allocation was expected to be $302,000.

The exception from discharge relied upon in the complaint and referred to in plaintiff's trial memorandum (CP 12) is § 523(a)(2)(B).[1] This exception from discharge requires proof that the debtor obtained credit by use of a written statement respecting the debtor's financial condition upon which the creditor reasonably relied, but which was materially false and was furnished with an actual intent to deceive the lender.

Plaintiff argues that there are false, misleading and omitted items which constitute "material falsity". Plaintiff seeks to establish intent to deceive from circumstances which it argues show that "the Defendant was utilizing his financial statements simply to tell the financial institution what he thought it needed to know to approve the loan."

The issues of whether the written statement was materially false and furnished with an actual intent to deceive are disputed by the debtor. The debtor is a CPA who has practiced with a financial management company and major national accounting firms since 1966. He offered an explanation of how he derived the

1. I am assuming the reference in the complaint to § 523(a)(2)(*A*) [CP 1 ¶ 21] was an oversight by plaintiff. The pleading and proof of the elements of § 523(a)(2)(B) has not been object- ed to by the defendant. The evidentiary and written submissions by defendant respond as though by consent the disputed issues are under § 523(a)(2)(*B*).

amounts of the value of his assets including his Florida residence and several automobiles and why a portion of his indebtedness was either characterized as "real estate loans" or omitted.

This aspect of the dispute is a close question, taking into consideration the debtor's professional background. Factually, it must be decided whether the debtor either knew quite well how to construct a financial statement overstated in his favor and did so deliberately or recklessly, or whether he unintentionally applied accounting techniques used for his developer clients which were inappropriate to convey to the bank the true state of his financial affairs with respect to unsecured debt. The debtor's notion that based on his prior business relationship with the bank officer and the solicitation of his business that the financial statement was a mere formality has also been considered.

It is plaintiff's burden to prove exception from discharge "by clear and convincing evidence." *In re Hunter*, 780 F.2d 1577, 1579 (11th Cir.1986). The conflicting evidence of falsity and intent to deceive does not convince me under this standard of proof that plaintiff has shown clear culpability of the defendant.

█ On the issue of reliance, the evidence before me is that the information contained in the financial statement was not the factor relied upon by the bank in extending credit to the debtor. A bank vice-president, Ms. Traba, solicited the debtor to move his accounts and establish a relationship with this bank. She had recently left her job at a different bank where the debtor was her customer for one-and-a-half years in a target group of professionals in the "upscale banking department." Her business relationship with the debtor made her aware of his employment with a well-known accounting firm where his current income was between $250,000 and $300,000.[2]

In arguing that its reliance on the financial statement was reasonable, plaintiff points to the fact that the defendant "was an accountant and a long-standing customer." (CP 12 at p. 14). It is these very factors which in a sense caused plaintiff to *not rely* on the financial statement. The debtor's business was solicited and credit extended because Ms. Traba was extremely impressed with his substantial earning capacity and his employment status. This evidence convinces me that plaintiff relied on previous knowledge and familiarity with the debtor and has failed to prove that it relied on the financial statement.

This conclusion is based on Ms. Traba's own testimony. In response to this question:

Q "The size of the credit obligations on the CBI report were not analyzed in any fashion in December of 1985; is that correct?"

her response was:

A "I looked at it in a cursory manner to verify his payment history." [Ex. N. p. 85].

Plaintiff's real interest in "evaluating" Mr. Lawrence's credit history in this cursory manner is typified by this response:

"... it is not just the financial statement, but because of course I relied on Mr. Lawrence's indication of income based on his prior tax returns and his note indicating he would be making approximately $300,000 in the coming year."[3] [Ex. N. p. 89].

When questioned about the condition understood by plaintiff that Mr. Lawrence would extinguish his bridge loan at Southeast Bank and responding to why Northern Trust [plaintiff] did not make the proceeds payable to Southeast Bank and control where they went, Ms. Traba testified:

"Because we trusted Mr. Lawrence." (Ex. N. p. 98].

There is cumulative evidence of this attitude of cursory treatment of the financial

---

**2.** The fact of the debtor's change in employment and resulting months without employment starting in January, 1986 has not been overlooked, but is not within the time relevant to this decision.

**3.** The $302,000 relates to a year-end determination relating back to 1985 earnings.

documentation and actual reliance on personal evaluations regarding defendant's earning capacity and desirability of obtaining his business.

I have not overlooked the testimony of Ms. Traba that she "would not have loaned Mr. Lawrence the amount of money loaned him had I known of the other borrowings." [Ex. N. p. 84]. However, this is overridden by cumulative contradictory testimony of the actual considerations for making the $85,000 loan. Therefore, I find that the financial statement was a necessary formality, but an irrelevant factor in determining whether to extend credit to the debtor.

I find no use of a materially false written statement on which the lender reasonably relied that the debtor caused to be made or published with intent to deceive.

Plaintiff has failed to carry its burden of establishing a basis for the exception of its claim from discharge under § 523(a)(2)(B).

As is required by B.R. 9021(a), a separate judgment will be entered dismissing this complaint with prejudice.

DONE and ORDERED.

